**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHRYN DUES, | ) | |
| | ) | CASE NO.   1:09-cv-01951 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Kathryn Dues ("Dues") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Dues's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court VACATES and REMANDS the final decision of the Commissioner for further proceedings consistent with this opinion.

### I. Procedural History

On December 5, 2005, Dues filed an application for POD, DIB, and SSI alleging a disability onset date of November 27, 2005, and claiming that she was disabled due to a stroke. Her application was denied both initially and upon reconsideration. Dues timely requested an administrative hearing.

On February 2, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Dues, represented by counsel, testified. Neurologist Hershel Goren, M.D., testified as the medical expert ("ME"), and certified rehabilitation counselor Kevin Yi, M.Ed., testified as the vocational expert ("VE"). On April 24, 2009, the ALJ found Dues was able to perform her past relevant work and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

### II. Evidence

*Personal and Vocational Evidence*

Born on August 24, 1956, and age fifty-two (52) at the time of her administrative hearing, Dues is a "person closely approaching advanced age" under the social security regulations. *See* 20 C.F.R. §§ 404.1563(d) & 416.963(d). Dues has a high school diploma and attended college classes for a quarter. She has past relevant work as a customer service marketing person and a home health aide companion. (Tr. 512.)

*Medical Evidence*

On November 26, 2005, Dues was hospitalized for five days after having a cerebrovascular accident (*i.e.* a stroke). (Tr. 365.) On examination, Dues had some mild dysarthria, left drift on the arm and leg, and some facial paresis. *Id*. Though she had some

2

slurred speech, her language was intact. *Id*. Her motor strength was four out of five in her left arm and left leg. *Id*. Magnetic resonance imaging (MRI) showed an acute stroke (infarct) in the right side of her brain. *Id*. Dues received physical, occupational, and speech therapy and was transferred to inpatient rehabilitation on December 1, 2005. (Tr. 365-66.) She was discharged in good condition from rehabilitation on December 31, 2005. (Tr. 386.)

On January 3, 2006, Dues was seen by Cynthia Samples, Occupational Therapist. (Tr. 411.) Her problems were noted to include decreased range of motion, decreased strength, decreased muscle tone, decreased sensory motor, decreased cognition, decreased endurance/activity tolerance, decreased functional transfers, and depression. *Id*.

On January 4, 2006, Dues was seen for an initial evaluation by Timothy Nuber, Physical Therapist. (Tr. 408.) Her problems were noted to include decreased strength, decreased gait, and decreased safety awareness. *Id*.

Dues was next seen by Ronna Forkosh, Speech Therapist, on January 11, 2006. (Tr. 406.) Her problems were noted to include decreased oral motor strength, oral dysphagia, decreased speech intelligibility, decreased vocal intensity, and decreased breath support. *Id*.

In early February 2006, during therapy, Dues exhibited good activity endurance, upgraded shoulder flexion, and was upgraded from fair to good in "mood and self worth." (Tr. 414-15.)

On March 28, 2006, Kareem Elder, M.D., with whom Dues treated from August 29, 2005 until March 27, 2006, completed the initial medical information form for the Bureau of Disability Determination. (Tr. 346-47.) Dr. Elder related that Dues had mildly slurred speech, left arm weakness, and "minimal gait instability" with no medical need for an ambulatory aid.

*Id*. He further stated that Dues was unable to perform fine and gross manipulations with her left hand, was able to communicate despite slurred speech, and had no loss of intellectual function. *Id*.

On June 10, 2006, Diane Manos, M.D., reviewed the medical evidence and completed a Physical Residual Functional Capacity Assessment. (Tr. 338-45.) She opined that Dues could lift or carry ten pounds occasionally and less than ten pounds frequently, could sit, stand, and walk for six hours each, could occasionally climb ramps or stairs and balance, could frequently stoop, kneel, crouch, and crawl, could never climb ladders, ropes, or scaffolds, and should avoid all exposure to hazards in the workplace. (Tr. 340-42.) She further opined that Dues could not use her left hand or left foot to operate controls or perform fine or gross manipulation with her left hand. (Tr. 339-41.)

On May 25, 2007, Dues saw S. Venkat, M.D., and reported that she had been depressed since January of 2007, that she wanted to try an anti-depressant, and that she wanted "a statement stating that she's depressed." (Tr. 328.) Dr. Venkat diagnosed Dues with depression and prescribed Zoloft, an antidepressant. *Id*.

On March 4, 2008, Dues underwent an elective hysterectomy after being diagnosed with a large uterine mass, right tubo-ovarian abscess, and a left ovarian cyst. (Tr. 266.) Shailaja Sundaresh, M.D., noted that Dues "had a [stroke], and at this time shows no residual problems except for some mild hemiparesis noted, particularly over the facial nerve" (Tr. 266.)

In a letter dated November 13, 2008, Hari Balaji, M.D., noted that due to her stroke, Dues "has still not regained total use of her arms and continues to have problems swallowing." (Tr. 166.)

On December 17, 2008, Dues again complained of depression. (Tr. 130.) Dr. Venkat prescribed Lexapro, an antidepressant. (Tr. 133.)

*Hearing Testimony*

At the hearing, Dues testified to the following:

- She was working part-time for a placement agency – approximately 22 hours a week – but felt she could not work full-time due to fatigue. (Tr. 489.)

- Since suffering a stroke, she has had problems speaking, as well as problems using her left hand and leg. She underwent physical therapy and speech therapy, but had achieved her maximum ability. (Tr. 493-95.)

- Initially after the stroke, she used a cane. She can walk slowly for a half hour before needing to sit. (Tr. 496.)

- She has depression and takes Lexapro, which has "helped a lot." (Tr. 495.)

The ME, after reviewing Dues's medical file and hearing her testimony, stated that Dues did not meet or equal any listing individually or in combination. (Tr. 502.) He opined that she could work full time with the following restrictions: lifting no more than twenty pounds occasionally and ten pounds frequently; never climbing ladders, ropes, or scaffolds; no exposure to unprotected heights; and, only occasional handling and fingering with the left hand. (Tr. 502-03.) While the ME noted that Dues had some speech problems after the stroke, he opined that the impact was minimal leaving her the ability to communicate effectively. (Tr. 504.)

The ALJ posed the following hypothetical to the VE:

The first hypothetical worker is 52 years old, a high school, well, more than a high school education but no currently relevant vocational training. Exertionally, this first hypothetical worker can do a range of light work, and specifically what I mean by that is the first hypothetical worker can sit, stand, or walk for six hours each during an eight hour day. Lift, carry, push, or pull 10 pounds frequently and 20 pounds occasionally. The first hypothetical worker is further limited in that she is precluded from using ladders, ropes, and scaffolds. She is precluded from tasks involving balance. She can do only occasional handling and fingering

5

> operations with her left hand ... [a]nd the left hand is this hypothetical worker's dominant hand.  Continuing with her limitations.  The hypothetical worker is precluded from exposure to workplace hazards such as unprotected heights and unprotected moving machinery.  And, finally, the hypothetical worker ... can do tasks requiring no more than occasional speech.

(Tr. 512-13.)

The VE testified that a person with such limitations would be able to perform Dues's past relevant work as a home health aide companion and as a personal attendant.  (Tr. 513.)  The hypothetical worker, however, would be unable to perform Dues's past relevant work as a marketing person because of manipulative and speech limitations.  (Tr. 513-14.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when

---

[1] The entire five-step process entails the following: First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

she became disabled; and (3) she filed while he or she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Dues was insured on her alleged disability onset date, November 27, 2005 and remained insured through the date of the ALJ's decision, April 24, 2009. (Tr. 10.) Therefore, in order to be entitled to POD and DIB, Dues must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Dues established a medically determinable, severe impairment, from the residual effects of her stroke. However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Dues is able to perform her past work activities, and has a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Dues is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal

standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

Dues claims the ALJ erred by: (1) finding that her depression did not constitute a severe impairment; (2) failing to consider her impairments in combination; (3) failing to comply with 20 C.F.R. § 404.1527(d) when weighing the medical opinions of record; (4) failing to accord proper weight to the opinion of her treating physicians; (5) failing to fully and fairly develop the administrative record; and, (6) finding that she could perform her past relevant work as a home health aide/companion. As Dues's third and fourth assignments of error are dispositive, they alone will be addressed.

### *Treating Physicians*

Dues argues that the ALJ failed to accord proper weight to the opinion of Dr. Elder, who stated that Dues was unable to perform fine and gross manipulations with her left hand. (Tr. 346.) Dues argues that this opinion was also supported by the consultative examiner, Dr. Manos, who found that she was limited to "no fine or gross manipulation on the left side." (Tr. 341.) Dues further argues that the ALJ improperly relied on the testimony of the ME without

8

presenting good cause for disregarding Dr. Elder's opinion. (Pl.'s Br. at 11-13.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

The opinion of a treating physician must also be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

Though the ALJ's opinion does not expressly say as much, it is clear that the ALJ adopted the ME's opinion that Dues could perform occasional handling and fingering with her left dominant hand and discounted the opinions of treating physician Dr. Elder and consultative physician Dr. Manos, which found that Dues was precluded from any handling or fingering with the left hand.[3] The ALJ's decision contains no explanation as to why he credited the opinion of the ME while rejecting the opinions of Dr. Elder and Dr. Manos, and the Commissioner concedes as much. (Def.'s Br. at 9.) Nonetheless, the Commissioner, relying on *Wilson v. Comm'r of Soc. Sec.*, 378, F.3d 541, 547 (6th Cir. 2004), essentially argues that ALJ's failure to address the treating physician's opinion was harmless as it would not lead to a different result on remand. Pursuant to 20 C.F.R. § 404.1527(d)(2), the Commissioner must give "good reasons in our notice of determination or decision for the weight we give your treating source's opinion" based on the factors set forth in the regulations. Here, no reasons were given whatsoever. Moreover, the Commissioner's reliance on *Wilson* in this matter is misplaced. The *Wilson* decision provides as follows:

> "[A]n agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits *or deprived of substantial rights because of the agency's procedural lapses*" (emphasis added). A procedural right must generally be understood as "substantial" in the context of this statement when the regulation is intended to confer a procedural protection on the party invoking it. The Supreme Court has recognized the

---

[3] This inference is based on the ALJ's reliance on the VE's testimony, which was given in response to a hypothetical posed by the ALJ. The ALJ's hypothetical expressly noted that the hypothetical worker "can do only occasional handling and fingering operations with her left hand ... [a]nd the left hand is this hypothetical worker's dominant hand." (Tr. 16; 512-13.)

>distinction between regulations "intended primarily to confer important procedural benefits upon individuals" and regulations "adopted for the orderly transaction of business before [the agency]." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39, 25 L. Ed. 2d 547, 90 S. Ct. 1288 (1970) (internal quotation marks omitted). In the former case, the regulation bestows a "substantial right" on parties before the agency, and "it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235, 39 L. Ed. 2d 270, 94 S. Ct. 1055 (1974); *see also Vitarelli v. Seaton*, 359 U.S. 535, 540, 3 L. Ed. 2d 1012, 79 S. Ct. 968 (1959); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267, 98 L. Ed. 681, 74 S. Ct. 499 (1954). In contrast, in the case of procedural rules "adopted for the orderly transaction of business," an agency has the discretion "to relax or modify its procedural rules" and such action "is not reviewable except upon a showing of substantial prejudice to the complaining party." *Am. Farm Lines*, 397 U.S. at 539 (quotation omitted). Section 1527(d)(2) falls in the former category, creating an important procedural safeguard for claimants for disability benefits. *Snell*, 177 F.3d at 134.
>
>That is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error. We do not decide the question of whether a *de minimis* violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. *Cf. NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2)--the provision of the procedural safeguard of reasons--even though she has not complied with the terms of the regulation. However, none of these possibilities is present in the instant case, and the ALJ committed reversible error by depriving Wilson of the procedural right given to him by the agency's regulation.

*Wilson*, 378 F.3d at 547.

Here too, the ALJ committed reversible error by depriving Dues of the procedural right to be given an explanation regarding the weight ascribed to her treating source. The ALJ's

failure to do so hardly constitutes a *de minimis* violation in the present case, where the issue of whether Dues could perform any fine or gross manipulation with her left hand would surely have a significant impact on her residual functional capacity.

The shortcomings of the ALJ's analysis on this issue are further highlighted by the Commissioner's remaining arguments failing to rely on the actual "analysis" provided in the ALJ's opinion. *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Oct. 31, Ohio 2007) ("The inadequacy of the ALJ's analysis is made even more apparent by Defendant's argument in his brief.  Rather than citing the ALJ's explanation for the weight given to various medical opinions, Defendant creates arguments to support the ALJ's opinion that were not actually contained in the ALJ's decision.")  As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *Id.*, *citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

Therefore, while Dr. Elder's opinion may or may not have been supported by objective medical evidence or, while the ME's opinion might have been entitled to greater weight based on his specialization as a neurologist, the ALJ never proffered any of these reasons as an

explanation in his opinion. As such Dues's assignment of error is well taken, and this matter remanded for a new decision that adequately explains the weight accorded to the various medical sources of record in compliance with 20 C.F.R. § 404.1527. As this matter is being remanded, Dues's remaining assignments of error are hereby rendered moot.

### VII. Decision

Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Greg White<br>U.S. Magistrate Judge

Date: May 10, 2010